<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BENJAMIN M. GOLDSMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY MUTUAL INSURANCE<br>COMPANY *et al.*,<br><br>    Defendants. | No. 23cv1658 (EP) (AME)<br><br>OPINION |

**PADIN**, **District Judge.**

Plaintiff Bejamin M. Goldsmith brings this insurance dispute against Defendants Liberty Mutual Insurance Company and Wausau Underwriters Insurance Company (together "Wausau"), and John or Jane Doe. D.E. 11 ("Amended Complaint" or "FAC"). Before the Court is Wausau's motion for summary judgment under Federal Rule of Civil Procedure 56(a). D.E. 43.[1] Goldsmith opposes. D.E. 44 ("Opp'n"). Wausau replies. D.E. 49 ("Reply").

The Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the reasons explained below, the Court will **DENY** Wausau's Motion.

I.   BACKGROUND[2]

  A.   Factual Background

On December 5, 2022, Goldsmith was driving along the center lane of the New Jersey Turnpike when a red Toyota Corolla (the "Red Toyota") driving in front of him suddenly stopped.

---

[1] Wausau filed their brief as D.E. 43-1 ("Mot." or "Motion") and their notice of motion at D.E. 43.

[2] The facts are drawn from Wausau's Statement of Material Facts, D.E. 43-2 ("SOMF"), from Goldsmith's Counterstatement of Material Facts, D.E. 46 ("Counterstatement"), Wausau's Supplemental Response to Goldsmith's Counterstatement, D.E. 49-1, and from the exhibits

Counterstatement ¶¶ 3-4, 11. In an attempt to avoid a collision with the Red Toyota, Goldsmith swerved from the center lane on the New Jersey Turnpike to the right lane, lost control of his vehicle, and rolled over onto the right shoulder of the roadway. *Id.* ¶ 3. As a result of his vehicle rolling over, Goldsmith sustained serious physical injuries. *Id.* ¶ 4.

In the moments immediately preceding the accident, the Red Toyota was about fifteen to twenty car lengths ahead of Goldsmith when it suddenly stopped.[3] Counterstatement ¶ 11. Goldsmith was driving about the speed limit, which he believes was about 65 mph. *Id.* ¶ 12. A truck driver who was following behind Goldsmith on the New Jersey Turnpike also represents the speed limit was 65 mph. D.E. 45, Ex. A ("Gomez Dep.") at 18:16-19:1. Wausau contends it was 55 mph based upon a police officer's report of the accident. SOMF ¶¶ 12-13. As the Red Toyota stopped, Goldsmith hit his brakes for about one to two seconds and slowed down to about 40-45 mph. *Id.* ¶¶ 14-15. Goldsmith, however, determined he could not avoid a collision with the Red Toyota and after seeing that the right lane was clear, swerved in that direction. *Id.* ¶ 14. Unfortunately, Goldsmith lost control of his vehicle in the swerve, and it rolled over onto the right shoulder of the New Jersey Turnpike. *Id.* ¶ 3. The Red Toyota did not remain on the scene and its driver has not been identified.[4] D.E. 43-3, Ex. D ("Goldsmith Dep.") at 93:19-94:24.

Goldsmith's mother, Lois Goldsmith, held an insurance policy with Wausau (the "Wausau Policy"). SOMF ¶ 2; FAC at 3. Because Goldsmith was a member of her household, he was

---

referenced therein. The facts described are undisputed unless noted otherwise. The Court references Goldsmith's Amended Complaint where appropriate for further context.

[3] In Goldsmith's briefing, he contends the Red Toyota was about ten to twenty car lengths ahead of him. Opp'n at 9 ("When [Goldsmith] first saw the Red Toyota it was of 10-20 car lengths ahead of [him].").

[4] Because the driver of the Red Toyota absconded from the scene, the driver is unidentified and referred to in this action as John or Jane Doe, or as the "phantom driver" of the Red Toyota.

entitled to coverage under the Wausau Policy. SOMF ¶¶ 1-2. Goldsmith submitted a claim for coverage under an uninsured motorist ("UM") provision (which can provide coverage for accidents caused by phantom drivers), but Wausau denied it after determining that Goldsmith was "the proximate cause of the automobile accident." *Id.* ¶ 5.

### B. Procedural Background

After Wausau's denial of coverage, Goldsmith filed his Complaint on March 23, 2023. D.E. 1. Goldsmith then filed his Amended Complaint on May 16, 2023. FAC. The parties engaged in and completed fact and expert discovery. *See, e.g.*, D.Es. 14, 28. Following unsuccessful mediation, D.E. 31, and unsuccessful settlement negotiations, D.E. 39, Wausau then filed this Motion.

## II. LEGAL STANDARD

Courts should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004).

The movant bears the initial burden of showing the basis for its motion and demonstrating that no dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).  Once the movant identifies evidence in support of its motion for summary judgment, the nonmovant must then counter with evidence that demonstrates there is a genuine issue of fact.  *Big Apple BMW, Inc. v BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992).  The Court must then view the evidence in the light most favorable to the non-moving party and determine whether a genuine dispute exists.  *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

**III.    ANALYSIS**

Under New Jersey law, drivers may seek coverage under UM provisions for accidents caused by phantom drivers.  *Krzykalski v. Tindall*, 232 N.J. 525, 538 (2018).  To collect, a plaintiff must be able to prove that the phantom driver is liable in tort for the damage caused.  *Riccio v. Prudential Prop. & Cas. Ins. Co.*, 108 N.J. 493, 499 (1987).  Because the "normal rules governing tort liability and damages" govern actions against phantom drivers, *id.*, liability cannot attach to the phantom driver if a plaintiff bears more than fifty percent of fault, *see Del Tufo v. Twnp. of Old Bridge*, 147 N.J. 90, 118 (1996) (citing N.J. Stat. Ann. § 2A:15-5.1).[5]

The parties' dispute here boils down to whether a reasonable jury, after considering evidence regarding Goldsmith's purported proximity to the Red Toyota, purported speed, and loss of control while swerving, could reasonably assign fifty percent or more of fault to the phantom driver.  *See* Mot. at 1.  Because the amount of fault attributable to Goldsmith and the amount of fault attributable to the phantom driver are issues of fact for the jury, the Court will **DENY** Wausau's Motion.

---

[5] To establish a negligence claim under New Jersey law, a plaintiff must establish a duty of care, a breach of that duty, proximate cause, and actual damages.  *Townsend v. Pierre*, 221 N.J. 36, 51 (2015).  In the parties' briefing, only proximate cause is at issue.

### A.      Whether Goldsmith Maintained a Safe Distance Behind the Red Toyota

New Jersey courts have held that "[i]t is elementary" that a car following another in the same lane of traffic, must "maintain a reasonably safe distance behind the car ahead, having due regard to the speed of the preceding vehicle and the traffic upon and condition of the highway." *Dolson v. Anastasia*, 55 N.J. 2, 10 (1969) (citing N.J. Stat. Ann. § 39:4-89).  A driver's failure to maintain that safe distance, resulting in an accident, is negligence.  *Id.* (citing N.J. Stat. Ann. § 39:4-89).

Wausau invokes N.J. Stat. Ann. § 39:4-89, which requires that drivers maintain a safe distance behind other drivers, to argue that Goldsmith was mostly at fault for the accident because the undisputed material facts show that he did not maintain a safe distance behind the Red Toyota.  Mot. at 8-9.  Whether Goldsmith maintained a reasonable distance behind the Red Toyota is a fact issue for the jury to determine.  And even if the Court could determine that Goldsmith failed to maintain a safe distance behind the Red Toyota in violation of N.J. Stat. Ann. § 39:4-89, any finding that Goldsmith was in *some* part negligent would still not preclude imposing more than fifty percent liability against the phantom driver of the Red Toyota.

#### 1.      *Goldsmith did not necessarily violate N.J. Stat. Ann. § 39:4-89*

Wausau contends that drivers must maintain a safe distance behind other drivers and "be prepared for the sudden appearance of obstacles in the street . . . ."  Mot. at 8-9 (quoting *Finley v. Wiley*, 103 N.J. Super. 95, 103 (App. Div. 1968)).  It follows, according to Wausau, that Goldsmith's need to swerve to avoid a collision with the Red Toyota itself indicates that Goldsmith negligently failed to maintain a safe distance behind the Red Toyota in violation of N.J. Stat. Ann. § 39:4-89.  *See id.*

Wausau's argument relies on an inference that New Jersey caselaw does not support reaching. *See La Mandri v. Carr*, 148 N.J. Super. 566, 571-72 (App. Div. 1977) ("We think that the section of the [N.J. Stat. Ann. § 39:4-89] in controversy was not intended to apply indiscriminately to any case in which the front of one vehicle comes into contact with the read of another, irrespective of how the collision occurred."). That Goldsmith needed to swerve "does not necessarily lead to the conclusion that there was a violation of N.J. [Stat. Ann.] § 39:4-89" for failure to maintain a safe distance. *Leder v. Sarpong*, No. 1839-06T1, 2007 WL 3341741, at *3 (N.J. Super. Ct. App. Div. Nov. 13, 2007). More than just the fact that an accident took place is needed. *See id.*; *Guerrier v. Lliguichuzhca*, No. 1568-17T3, 2019 WL 1422256, at *5 (N.J. Super. Ct. App. Div. Mar. 29, 2019) (citing *La Mandri*, 148 N.J. Super. at 571) (holding that a jury could find that defendant negligently violated N.J. Stat. Ann. § 39:4-89 but that the jury could *also* find that defendant did not violate N.J. Stat. Ann. § 39:4-89).

Here, there is no evidence that Goldsmith had been tailgating the Red Toyota. Indeed, Goldsmith was about fifteen to twenty car lengths behind the Red Toyota. SOMF ¶ 11. Goldsmith also maintains that there was no apparent reason for the Red Toyota to abruptly stop and upon seeing that a collision appeared inevitable, he veered to the right lane after seeing that it was clear. *Id.* ¶¶ 14, 16. Therefore, after viewing the facts in the light most favorable to Goldsmith, a reasonable jury could conclude Goldsmith kept a proper lookout and was not, in fact, too close to the Red Toyota. Thus, contrary to Wausau's contentions, the facts do not compel the conclusion that Goldsmith negligently violated N.J. Stat. Ann. § 39:4-89.

> 2. *Even if Goldsmith was negligent under N.J. Stat. Ann. § 39:4-89, the phantom driver could still be found mostly at fault for the accident*

Even if Goldsmith had negligently violated N.J. Stat. Ann. § 39:4-89, Goldsmith could still recover under the UM policy provision because a jury could find that the phantom driver was *more*

6

at fault for the accident than Goldsmith. Finding a plaintiff was negligent does not mean the plaintiff's negligence was necessarily *greater* than the defendant's. *See, e.g.*, *Rosinola v. Koehler*, No. 526-6T2, 2007 WL 2982272, at *1 (N.J. Super. Ct. App. Div. Oct. 15, 2007). Only if the plaintiff was more than fifty percent at fault is liability precluded. N.J. Stat. Ann. § 2A:15-5.1.

While Goldsmith was driving on the New Jersey Turnpike, a Red Toyota came to an abrupt stop on the highway. SOMF ¶ 3. Goldsmith, driving in the center lane of the New Jersey Turnpike, had the right to assume that the phantom driver of the Red Toyota would exercise reasonable care and not make a sudden stop in the absence of any obstruction. *Goldstone v. Tuers*, 189 N.J. Super. 167, 169 (1983).

Courts in New Jersey regularly find that it is reasonable to assign more fault to the driver who abruptly stops than to the driver who fails to avoid a collision because of the driver's abrupt stop. *See, e.g.*, *Rosinola*, 2007 WL 2982272, at *3 (affirming jury's judgment because it was reasonable to conclude that the plaintiff who "inexplicably stopped her vehicle" was more negligent than the defendant that failed to keep a safe distance behind her); *Richardson v. Milling*, No. 5869-13T2, 2016 WL 1723951, at *3 (N.J. Super. Ct. App. Div. May 2, 2016) ("[A] reasonable jury could conclude defendant breached her duty of care by attempting to stop at a green light, and that her conduct was the proximate cause of the accident and plaintiff's resulting injuries.").

Here, the Red Toyota was allegedly driving in the middle lane of the New Jersey Turnpike at "normal spee[d]" when it suddenly stopped for no discernable reason. SOMF ¶¶ 3, 16. As Goldsmith hit his brakes and determined that he would not be able to slow down quickly enough to avoid a collision, he swerved to the right, where he then lost control of his vehicle and rolled over. While Goldsmith swerved and rolled over, the Red Toyota took off and drove away. Goldsmith Dep. at 93:19-94:24. On these facts, a reasonable jury could find the phantom driver's

7

stop contributed at least fifty percent of fault to Goldsmith's accident. *See Imable-Mayorga v. Labrie*, No. 09-3567, 2011 WL 3203741, at *4 (D.N.J. July 27, 2011) ("In order for stopping suddenly to constitute negligence, there must be some evidence that the sudden stop was unreasonable." (citing *Rosinola*, 2007 WL 1982272, at *3)).

Because a reasonable jury could apportion at least fifty percent of fault to the phantom driver, the Court will **DENY** Wausau's Motion.

### B. Goldsmith's Loss of Control Does Not Preclude Liability

Wausau additionally contends that Goldsmith was at fault because he had been driving dangerously, and that this too precludes concluding that the Red Toyota was mostly at fault. Mot. at 10. Wausau seeks to support their argument with a police report that states Goldsmith admitted to losing control of his vehicle and that upon investigation, the officer determined that Goldsmith "failed to maintain directional control" and then "subsequently . . . entered the right shoulder and overturned." D.E. 43-3, Ex. B at 2. The police report, which states the speed limit was 55 mph, also contradicts Goldsmith's and the truck driver's accounts that the speed limit was 65 mph. Goldsmith Dep. at 39:22-23; Gomez Dep. at 18:20-24. Goldsmith objects on grounds that the report is hearsay and inadmissible under Federal Rule of Evidence 803(8) as untrustworthy. Opp'n at 12.

Parties may object to a motion for summary judgment on grounds that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see Lopez v. Honeywell Int'l, Inc.*, No. 10-3518, 2014 WL 3500326, at *9 (D.N.J. July 13, 2014) ("Only evidence which is admissible at trial may be considered in ruling on

8

a motion for summary judgment." (quoting *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995))).

In Reply, Wausau responds that the report is not hearsay and therefore is admissible evidence that may be considered here because "the police officer's assessment is a background fact about how this [UM] claim came to be litigated before this Court."  Reply at 7.  Because the Court cannot tell what Wausau means by "a background fact about how this [UM] claim came to be litigated," and because Wausau's brief provides no further explanation, the Court assumes that the police report would be offered for the truth of what it says.  And because Wausau has not, at this time, shown satisfaction of an exception to the hearsay rule, the Court will not consider the police report.

Federal Rule of Evidence 803(8) "explicitly excepts public records and reports resulting from an investigation made pursuant to authority granted by law, from exclusion under the hearsay rule, because official reports contain inherent indicia of trustworthiness." *Clark v. Clabaugh*, 20 F.3d 1290, 1294-95 (3d Cir. 1994) (internal quotations omitted).[6]  Under Rule 803(8), police reports are presumed admissible unless a party demonstrates its untrustworthiness.  *Id.* (citing *Beech Aircraft*, 488 U.S. at 161-70).  Factors relevant to the trustworthiness of a police report include:  "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3)

---

[6] The wording of Rule 803 has changed over the years.  *See* Advisory Committee Notes on Fed. R. Evid. 803.  The changes that have gone into effect since *Beech Aircraft Corp v. Rainey*, 288 U.S. 153 (1988) and *Clark* have not changed the relevant substance of the rule as it applies to civil cases.  *See, e.g.*, *id.* at 1987 Amendment ("The amendments are technical.  No substantive change is intended."); *id.* at 1998 Amendment ("No change in meaning is intended."); *id.* at 2011 Amendments ("These changes are intended to be stylistic only.  There is no intent to change any result in any ruling on evidence admissibility.").

9

whether a hearing was held; and (4) possible bias . . . ." *Id.* at 449 n.11 (citing Advisory Committee's Notes on Fed. R. Evid. 803(8)).

Goldsmith nevertheless objects to the police report's admissibility. The reporting witness here neither witnessed the accident nor has he provided testimony regarding his observations. Although courts regularly deem police reports admissible in civil cases where the reporting officer was not an eyewitness to incidents described therein, the reporting officer or another custodian is typically available to provide a foundation for the report and explain how the report was compiled. *See, e.g.*, *Prescott v. R&L Transfer, Inc.*, No. 11-203, 2015 WL 12564232, at *3 (W.D. Pa. Apr. 21, 2015). In contrast here, without the reporting officer's testimony, it is not possible for the Court to discern the reporting officer's skill and experience, the timeliness of his investigation, or any possible bias, which the Court requires to evaluate the trustworthiness of the police report. *See Surman v. Payne*, No. 19-216, 2023 WL 2716224, at *11 (W.D. Pa. Mar. 30, 2023) (admitting police report based in part on the reporting officer's testimony regarding his experience and the timeliness of his investigation). Nor is the Court able to evaluate the grounds upon which the reporting officer conducted his investigation or what the reporting officer's narrative statements should be understood to mean. *See Atlantic Mut. Ins. Co. v. Lavino Shipping Co.*, 441 F.2d 473, 475 (3d Cir. 1971) (affirming district court's exclusion of a fire marshal's investigative report because the proponent "failed to lay a proper foundation for [the report]."); *see also Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. 13-284, 2015 WL 1422503, at *2 (Mar. 30, 2015) (explaining that police reports are admissible under Rule 803(8) only "[p]rovided the proper

10

foundation is established"). The Court will therefore refrain from considering the police report as part of Wausau's Motion.

In any case, even if the Court were to consider the police report, Wausau would not be entitled to summary judgment because at best, the police report merely raises a genuine issue of material fact regarding Goldsmith's own (and undeterminable amount of) negligence. A jury would not need to credit the police report's notation that the speed limit was 55 mph because Goldsmith and the truck driver driving behind him testified that the speed limit was 65 mph. Goldsmith Dep. at 39:22-23; Gomez Dep. at 18:20-24. A jury could therefore credit Goldsmith and the truck driver over the police report. Nor would a jury need to conclude, based on the reporting officer's narrative, that Goldsmith *negligently* lost control of his vehicle or even that Goldsmith's negligence would preclude recovery. *See, e.g.*, *Brooks v. Longcor*, No.3405-22, 2025 WL 323889, at *6 (N.J. Super. Ct. App. Div. Jan. 29, 2025) (explaining that a driver's drunkenness may be relevant to the driver's negligent driving but would be "by itself insufficient" to bar recovery). Wausau, therefore, is not entitled to summary judgment that Goldsmith was negligent at all.

Because Goldsmith has raised a genuine issue of material fact with respect to proximate cause which would permit a reasonable jury to conclude that the Red Toyota was at fault for Goldsmith's accident, the Court will **DENY** Wausau's Motion.

### IV. CONCLUSION

For the reasons stated above, the Court will **DENY** Wausau's Motion. An appropriate Order accompanies this Opinion.

Dated: December 23, 2025

_Evelyn Padin_
Evelyn Padin, U.S.D.J.